IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| In re: | Chapter 13 |
|---|---|
| **Erika & Juan Vidal,** | Case No. 12-11758 (BLS) |
| Debtors. | Related Docket Nos. 20, 32 |
| In re: | |
| **Marcel D. & Vera D. Brown,** | Case No. 12-12319 (BLS) |
| Debtors. | Related Docket Nos. 4, 30 |
| In re: | |
| **Maverick & Maritza Baez,** | Case No. 12-12340 (BLS) |
| Debtors. | Related Docket Nos. 14, 18 |
| In re: | |
| **Michael S. & Deborah L. Richardson,** | Case No. 12-12563 (BLS) |
| Debtors. | Related Docket Nos. 4, 14 |

Mark M. Billion, Esq.  
Billion Law  
922 New Road, 2nd Floor  
Wilmington, DE 19805  

Michael B. Joseph, Esq.  
824 Market Street  
P.O. Box 1351  
Wilmington, DE 19899  

*Counsel for the Debtors*

*Chapter 13 Trustee*

1

## MEMORANDUM OPINION

This memorandum opinion is with respect to the Chapter 13 Trustee's informal objection to confirmation of the proposed Chapter 13 plans filed by the above-captioned Debtors. The Combined Debtors filed a Joint Memorandum In Support of Confirmation on November 15, 2012 [Richardson Docket No. 14]. The Court heard oral argument on the matter at the confirmation hearing for the Debtors' proposed plans on November 20, 2012. For the reasons that follow, the Court will sustain the Trustee's objection and direct the Debtors to submit amended plans consistent with this ruling.

### I. BACKGROUND

These Debtors each filed petitions under Chapter 13 of the Bankruptcy Code.[1] Each Debtor's principal residence is encumbered by two or more mortgages. The Debtors filed proposed plans purporting to "deem[] unsecured" and strip off one or more of these mortgage liens on their respective properties. In each plan, the language appears in ¶ 7, under the heading "Other Special Provisions of the Plan." The Richardson and Baez Debtors' plans state as follows with respect to the second mortgages on their respective properties (and also the third mortgage with respect to the Richardson Debtors):

> The second mortgage held by [the secured creditor] referenced in Schedule D...on the property listed in Schedule A...*is hereby deemed unsecured* and will be stripped via a to-be-commenced adversary proceeding.

Chapter 13 Plan ¶ 7 (emphasis added) [Richardson Docket No. 4]. The Browns and Vidal Debtors' proposed plans include substantially similar language, also in ¶ 7, as follows:

---

[1] The Debtors are all represented in their Chapter 13 cases by the same counsel. Because each of the Debtors' Chapter 13 plans raise the same issue, the Court held a single hearing and issues a single ruling applicable to all four of these cases.

> The second and third mortgage...*are by order of confirmation deemed unsecured* and will be stripped by a to be commenced adversary proceeding.

First Amended Chapter 13 Plan ¶ 7 (emphasis added) [Brown Docket No. 29].

When presented for confirmation on the consent calendar, the Chapter 13 Trustee objected to the foregoing provisions of Debtors' proposed plans. The Court thereupon scheduled a contested confirmation hearing, and the matter is now before the Court. At the hearing on this matter, the Trustee asserted that he lacks authority to recommend the plans for confirmation and raised concerns that the language in question runs afoul of the Bankruptcy Code and Rules. Finally, the Trustee contends that the plan terms at issue are contrary both to Third Circuit precedent and established local practice. The Debtors argue that the proposed language is both appropriate and effective to strip the liens in question.[2]

The proposed plans use substantially similar language and present identical questions of law. For ease of discussion, this Opinion will focus on the proposed plan submitted by the Richardson Debtors.[3]

## A. Trustee's Argument

The Trustee characterizes the proposed plan as presenting valuation, bifurcation, and lien-stripping on a summary basis. The Trustee asserts two main arguments against confirmation.[4]

---

[2] The Debtors have subsequently filed adversary proceedings seeking substantially the same relief, providing valuations of the claims and property, and asserting that the valuations justify stripping the mortgage liens. Some of the Debtors also filed amended plans. The Court's discussion herein is limited to the Debtors' assertion that the proposed plans, standing alone, are appropriate and sufficient to dispose of the question of value and effectively strip the liens.

[3] For the avoidance of doubt, the Court's analysis and findings apply to each of the Debtors' proposed plans.

[4] The Court has also recently considered related arguments asserted in another Chapter 13 case, *In re Coyle*, No. 11-13915 (BLS), Adv. No. 12-50803 (Memorandum Order dated Jan. 14, 2013) [Adv. Docket. No. 13], involving

3

First, the Trustee questions whether the plan, standing alone, may lawfully effectuate valuation and lien-stripping of the mortgagees' secured claims. The Trustee argues that the plan presents no evidence for valuation of the mortgage claims under 11 U.S.C. §§ 506 and 1322(b)(2). Further, the proposed language is said to be inconsistent with the requirement of a contested independent valuation proceeding under Bankruptcy Rule 3012 and the Third Circuit's holding in *In re Mansaray-Ruffin*, 530 F.3d 230, 236 (3d Cir. 2008). Notwithstanding the plan's clear expression of the Debtors' intent to file an adversary proceeding to strip the liens, the plan purports to summarily "deem" the lien unsecured, apparently without regard to the outcome of such a proceeding.

Second, the Trustee argues that the plan disregards local practice norms that promote efficient administration of the Chapter 13 docket, due process, and conformity with the Bankruptcy Code and Rules. The plan language proposed by the Debtors is not included in Local Form 103, and it differs materially from standard plan provisions for stripping home mortgage liens in this jurisdiction. Proposed and confirmed Chapter 13 plans in this Court typically announce a debtor's intention to file an adversary proceeding and treat such claims as unsecured pending the outcome of the valuation process, even if that process remains incomplete at confirmation. To the extent that a debtor loses in that adversary proceeding, the plan would of course need to be amended or modified to provide for the allowed secured claim. The Trustee also notes that the proposed language is inconsistent with the consent calendar criteria that guide counsel's and the Court's expectation of the contents of a Chapter 13 plan.

## B. Debtors' Argument

The Debtors rely heavily on the U.S. Supreme Court's decision in *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367 (2010) for the proposition that a plan is an appropriate vehicle for valuing and

---

substantially similar issues and factual background, but in the context of a confirmed plan.

4

stripping home mortgage liens. Further, the Debtors argue that, in the absence of an objection to confirmation, *Espinosa* allows the Court to confirm the proposed plan despite the lack of evidentiary support for valuation, and without regard to the outcome of a later-filed independent valuation proceeding. According to the Debtors, once confirmed, such a plan is *res judicata* and not subject to collateral attack with respect to its treatment of the stripped liens. Accordingly, the Debtors assert that the adversary proceeding referred to in the plan serves the purely ministerial purpose of clearing title. In response to the Trustee's argument that the proposed plan flaunts local practice and Third Circuit precedent, the Debtors say *Espinosa* controls and overrules *Mansaray-Ruffin*.

## II. JURISDICTION

The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(L) and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(A), (B) and (L).

## III. DISCUSSION

Bankruptcy Code § 1325(a)(5) requires debtors to pay creditors the value of their secured claims unless the creditors consent to less favorable treatment. Section 1322(b) sets forth the permissible contents of a plan. Section 1322(b)(2) provides that a plan may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence...*" 11 U.S.C. § 1322(b)(2) (emphasis added). The Supreme Court has interpreted this exception for home mortgages, known as the antimodification clause, to prohibit modification of secured and partially secured primary residence mortgage claims in a plan. *See Nobelman v. American Savings Bank*, 508 U.S. 324 (1993). In short, a Court cannot confirm a plan that modifies a home mortgage lien if that claim is nominally "in the money."

However, the Third Circuit Court of Appeals has construed *Nobelman* to allow modification of completely undersecured claims. *See McDonald v. Master Financial, Inc. (In re McDonald)*, 205 F.3d 606 (3d Cir. 2000); *see also* 4 Collier on Bankruptcy ¶ 506.03[7][c] (rev. 16th ed. 2009) (citing cases). Where the value of the senior mortgage on a debtor's property exceeds the value of the property, the debtor's plan may treat the junior mortgage as fully unsecured and strip the lien under certain circumstances. If there is even a single dollar of value available for the junior lienholder in the collateral, however, § 1322(b)(2) requires that the plan treat the junior claim as fully secured. The relevant inquiry is thus whether valuation of the claims and collateral demonstrates that the claims are completely unsecured.

The value of claims and collateral must be determined in accordance with 11 U.S.C. § 506. *See Nobelman v. American Savings Bank*, 508 U.S. 324, 328-29 (1993); *McDonald v. Master Financial, Inc. (In re McDonald)*, 205 F.3d 606, 609 (3d Cir. 2000). Section 506, titled "Determination of secured status," addresses the valuation and bifurcation of claims as follows:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest…is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property…and is an unsecured claim to the extent that the value of such creditor's interest…is less than the amount of such allowed claim. *Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.*

11 U.S.C. § 506(a)(1) (emphasis added). To determine value under this provision, courts must apply appropriate evidentiary standards and enforce the burden of proof. *See* 4 Collier on Bankruptcy ¶ 506.03[9] (rev. 16th ed. 2009) (citing cases).

In the Third Circuit, a burden-shifting framework governs the valuation of collateral to determine the extent to which a creditor's

claims are secured pursuant to § 506(a). *See In re Heritage Highgate, Inc.*, 679 F.3d 132, 139 (3d Cir. 2012). A properly filed proof of claim creates a presumption of the validity and amount of the claim. *Id.* at 140. In *Heritage*, a Chapter 11 case, the Third Circuit held that a party seeking to value and bifurcate secured claims under § 506 carries the burden of demonstrating the value of the claims and collateral. *Id.* at 140, 145 ("The Committee filed the motion seeking to have the [junior secured] claims deemed wholly unsecured, and it was therefore obligated to present evidence that the [residential subdivision's] fair market value, together with the value of other collateral held by Debtors, was less than the [senior lenders'] secured claim.").

Rule 3012 allows a court to "determine the value of a claim secured by a lien on property in which the estate has any interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim." Fed. R. Bankr. P. 3012. With respect to valuation by plan pursuant to § 506, Collier comments follows:

> If the plan proponent intends to value the secured creditor's claim through a plan provision, the proper procedural route is to apprise the secured creditor through the use of a motion or complaint as required by the rules. *Because the rules prescribe a particular procedure, it may be unreasonable to presume that the secured creditor should be on the lookout for a determination of its interests in a manner inconsistent with that procedure. Hence, the argument that the secured creditor should have read the plan is not altogether persuasive.*

4 Collier on Bankruptcy ¶ 506.03[a] (rev. 16th ed. 2009) (emphasis added). *Heritage* helpfully illustrates the interaction of Rule 3012 motion practice and plan provisions regarding valuation of claims. The Third Circuit's decision affirmed the bankruptcy court's ruling on a post-confirmation Rule 3012 motion. The confirmed plan provided that the secured creditors' claims were secured to the extent determined by the pending motion to determine the value of real property collateral pursuant to § 506. *See In re Heritage Highgate*, 679 F.3d at 138-39, 142 &

n.8. Consistent with these facts, this Court's established practice in its Chapter 13 docket reflects a similar relationship between lien-stripping plan provisions concerning real property mortgages and independent valuation proceedings that determine the effect, if any, of those provisions.

## A. The Debtors Have Not Carried Their Burden Under § 506(a)

The lien-stripping provisions of the Debtors' plan clearly implicate §§ 1322(b)(2) and 506(a). The second and third mortgages on the Debtors' property are evidenced by duly filed proofs of claim, and the Debtors have not filed objections thereto. The parties do not dispute that the claims are allowed claims and presumptively valid. *See* 11 U.S.C. § 502(a)-(b); *In re Heritage Highgate*, 679 F.3d at 140. The claims are secured by security interests in real property that is the Debtors' principal residence under § 1322(b)(2). Accordingly, pursuant to *Nobelman* and *McDonald*, the plan must conform with § 506(a) to strip off the liens on the Debtors' property.

The Court is not satisfied that the proposed plan, standing alone, passes muster under § 506(a). The most obvious reason is the Debtors' failure to carry their burden to demonstrate the value of the claims and collateral. The plan provides no appraisals or other evidence, or references thereto, tending to show that the value of the senior mortgage on the Debtors' property exceeds the value of the property. Read most favorably to the Debtors, the proposed plan arguably references valuation once, indirectly, in a citation to the mortgage "listed in Schedule D," which was prepared by the Debtors and filed with their Chapter 13 Petition. Chapter 13 Plan [Richardson Docket No. 4]. Schedule D lists creditors holding secured claims and indicates that the claims in question are fully unsecured. Chapter 13 Petition [Richardson Docket No. 1].

This reference alone is insufficient to carry the Debtors' burden. A meaningful evidentiary standard is appropriate where the purpose of valuation under § 506(a) is to summarily strip off a secured creditor's

liens, and where those liens have special protection against modification via plan under § 1322(b). An implicit reference to the Debtors' own valuation, with no supporting evidence, is insufficient to allow the Court to decide whether the claims are secured or unsecured under § 506.

Moreover, the proposed plan is more accurately characterized as evading the valuation process altogether. Notwithstanding contemplation of a "to-be-commenced adversary proceeding," the plan summarily "deems" the mortgages unsecured. [Richardson Docket No. 4]. This language is particularly troubling in light of the Debtors' repeated assertion that the adversary proceeding is unnecessary to give *res judicata* effect to the lien-stripping language. As discussed in more detail below, in this jurisdiction, plan provisions that value and strip liens on home mortgages are dependent upon the outcome of separate proceedings. Secured creditors do not expect a plan to summarily determine these issues.

### B. Lien-Stripping By Plan Requires an Independent Proceeding in this Jurisdiction

Plans that propose to strip home mortgage liens must be accompanied by an independent proceeding. *See In re Mansaray-Ruffin*, 530 F.3d at 237 ("It is appropriate that the Rules permit lien invalidation to occur only through litigation in an adversary proceeding—and not through a provision in a plan—for the invalidation of a lien on the property of the debtor held by a specific creditor is a matter of particularly great consequence, in terms of the applicable legal principles and the practical result."). As noted by the Trustee, the Debtors' plan is materially inconsistent with established practice in this Court. The proposed language is not a standard element of the Form Chapter 13 Plan approved for use in this jurisdiction. *See* Local Form 103. Plans presented to and confirmed by the Court generally provide for lien-stripping of home mortgages *subject to the outcome of an adversary proceeding*. These proceedings are not, as the Debtors argue,

merely title-clearing exercises, and they are expressly contemplated by the Court's standard plan confirmation order.[5]

The Court shares the Trustee's view that this requirement is consistent with the letter and spirit of the Bankruptcy Code and Rules. An independent proceeding is particularly important with respect to the home mortgage liens that are afforded special protection against modification via plan under § 1322(b)(2). Adversary proceedings—or motions filed under Rule 3012[6]—are the procedurally appropriate vehicle for presenting evidence and resolving disputes concerning valuation, bifurcation, and lien-stripping under § 506(a). They provide unambiguous notice that a creditor's claims are subject to modification. This Court, like many others, has developed streamlined processes that allow it to manage thousands of Chapter 13 cases under a consent calendar and give parties a reasonable expectation of what a plan will provide. The Court will not sanction efforts to upend this practice and open the doors to lien-stripping by ambush.

### C. *Espinosa* Requires Courts to Enforce the Requirements of the Bankruptcy Code and Rules

The Debtors' reliance on *Espinosa* is entirely misplaced. *Espinosa* held that a student loan creditor could not, four years after the bankruptcy court issued a plan confirmation order, use Federal Rule of Civil Procedure 60(b)(4) to void the plan on due process grounds. *Espinosa*, 130 S. Ct. at 1374-75. The Supreme Court found that the creditor had received constitutionally adequate notice of proposed plan language purporting to discharge the student loans, notwithstanding the bankruptcy court's legal error in confirming the plan absent a

---

[5] *See, e.g., In re Curtis Lewis Price, Jr.*, No. 11-11894-BLS, § I.D (Bankr. D. Del. Oct. 24, 2011) (Order, in standard Chapter 13 plan confirmation order form, approving Chapter 13 plan "subject to resolution of actions to determine the avoidability, priority, or extent of liens…[and] the resolution of all actions to determine [the] allowed amount of secured claims under Section 506") [Docket No. 30].

[6] Adversary proceedings are preferable because they allow the Court to rule on valuation simultaneously with any questions of the validity, priority, and extent of liens pursuant to Bankruptcy Rule 7001(2).

finding of undue hardship in a separate adversary proceeding required by the Bankruptcy Code and Rules. *See id.* But the Court clearly affirmed that bankruptcy courts "have the authority—indeed, the obligation—to direct a debtor to conform his plan" to applicable statutory and procedural requirements. *Id.* at 1381. Moreover, the Code "*requires* bankruptcy courts to address and correct a defect in a debtor's proposed plan even if no creditor raises the issue." *Id.* at 1381 n.14.

*Espinosa* is not an open invitation for Debtors to articulate whatever relief they can think up and include it in a plan. Under the Debtors' interpretation, a plan mailed to the affected party is confirmable, and once confirmed, entitled to *res judicata* effect, irrespective of whether such relief is permissible or even expressly prohibited by the Code. The Court rejects this interpretation. In this jurisdiction, plans that purport to strip home mortgage liens must be accompanied by evidentiary support and are subject to the outcome of independent valuation proceedings.[7]

## IV. CONCLUSION

For the reasons set forth above, the Trustee's objection to the proposed plans will be sustained, and the Court will direct the Debtors

---

[7] The Court also rejects the Debtors' assertion that *Espinosa* reverses or vacates the Third Circuit's decision in *In re Mansaray-Ruffin*, 530 F.3d at 236 (holding that adversary proceeding is required to effectuate confirmed Chapter 13 plan's invalidation of home mortgage lien). The Supreme Court limited its holding to a creditor's ability to vindicate its due process rights and void a confirmation order under Rule 60(b)(4). *See Espinosa*, 130 S. Ct. at 1376 & n.8. Further, *Espinosa* soundly rejected the Ninth Circuit's holding that, unless the affected creditor objects, a bankruptcy court must confirm a plan that fails to comply with the Code and Rules and is unaccompanied by a prescribed adversary proceeding. *See id.* at 1380. Assuming—without deciding—that *Espinosa* lowers *Mansaray-Ruffin's* bar for constitutionally adequate notice, the Supreme Court nevertheless reinforced the point that a plan is not an all-purpose vehicle. *Espinosa* in no way undercuts a bankruptcy court's obligation to police proposed plans and enforce the Bankruptcy Code and Rules.

to submit amended Chapter 13 plans in accordance with this memorandum opinion.

BY THE COURT:

Dated: February 5, 2013
Wilmington, Delaware

_____
Brendan Linehan Shannon
United States Bankruptcy Judge